J-A07022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CONSTRUCTURAL DYNAMICS, INC. D/B/A SILVI CONCRETE PRODUCTS, INC., PENN JERSEY CERTIFIED CONCRETE, INC., D/B/A SILVI CONCRETE OF BERLIN AND ALTA INDUSTRIAL PROPERTIES, INC., D/B/A SILVI CONCRETE OF LOGAN | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 1104 EDA 2021 |
| v. | : : : | |
| THOMAS P. CARNEY, INC. AND ARCH INSURANCE COMPANY | : : : | |
| Appellants | : | |

Appeal from the Judgment Entered May 28, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170701374

| | | |
|---|---|---|
| CONSTRUCTURAL DYNAMICS, INC. D/B/A SILVI CONCRETE PRODUCTS, INC., PENN JERSEY CERTIFIED CONCRETE, INC., D/B/A SILVI CONCRETE OF BERLIN AND ALTA INDUSTRIAL PROPERTIES, INC., D/B/A SILVI CONCRETE OF LOGAN | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | No. 1105 EDA 2021 |
| | : : : | |
| v. | : : : : | |
| THOMAS P. CARNEY, INC. AND ARCH INSURANCE COMPANY | : : | |

Appeal from the Judgment Entered May 28, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170701374

J-A07022-22

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 1, 2022**

This is a breach of contract action between Thomas P. Carney, Inc. ("Carney") and Constructural Dynamics, Inc. d/b/a Silvi Concrete Products, Inc., Penn Jersey Certified Concrete, Inc., d/b/a Silvi Concrete of Berlin and Alta Industrial Properties, Inc., d/b/a Silvi Concrete of Logan ("Silvi"). After a jury trial, Silvi obtained a judgment in its favor against Carney. A separate bench trial was held the on the issues relating to the Contractor and Subcontractor Payment Act ("CASPA")[1], litigation costs and attorneys' fees. Both parties have appealed. We affirm in part, vacate in part, and remand on the CASPA claim.

Carney, a concrete subcontractor, hired Silvi, a concrete supply company, to pour the mat slab (*i.e.*, the foundation) for the construction of the W Hotel in Philadelphia. The mat slab portion of the project was the largest single construction pour in the history of Philadelphia at the time. Carney originally contracted with a different concrete supplier, SJA. However, two weeks before the pour was scheduled, Carney requested that Silvi supply the concrete because Silvi was the only company that had "fly ash" (a component to strengthen concrete) in a quantity large enough for the project. Carney asked Construction Technology Laboratories ("CTL") to develop the recipe for the concrete. Silvi was to use the mix design and supply the concrete.

---

[1] 73 P.S. §§ 501-516.

- 2 -

The evening before the pour was scheduled, Silvi went to Carney's office to negotiate the contract. The parties decided that not only was Silvi to pour the concrete for the mat slab, but Silvi was also to be the sole supplier of concrete for the entire hotel construction project. Hours after signing the contract, Silvi began supplying the concrete for the mat slab, which took approximately 26 hours.

On July 16, 2016, seven days after the mat slab pour, Pennoni Associates, Inc. ("Pennoni"), the testing agency for the project, performed compression testing on Silvi's concrete and determined that nine of the 42 concrete cylinders broke at lower-than-expected compressions strengths. Carney promptly notified Silvi of the test results.

Twelve days after the mat slab pour, Carney terminated the contract with Silvi on July 22, 2016. After termination, Carney returned to SJA to supply the remaining concrete for the project. Despite being terminated, Silvi's employees attended the 28-day testing of the concrete cylinders by Pennoni, which, again, showed the concrete was below strength. Compression testing done at the 90-day and 180-day marks yielded similar results.

After the 180-day testing, Carney and Silvi jointly retained CTL to develop a plan to address the below-strength concrete. Carney and Silvi brought the proposed written plan prepared by CTL to the project's general contractor. The plan included taking eight-foot cores of hardened concrete from various locations in the mat slab and performing strength testing on those samples. Ultimately, on May 19, 2017, the project's structural engineer,

O'Donnell and Naccarato ("O&N"), accepted Silvi's concrete based upon the results of the core testing. Silvi's concrete still stands today.

Pursuant to the contract, Carney was supposed to pay Silvi by August 31, 2016, but withheld payment for approximately ten months. On May 23, 2017, Carney made a partial payment to Silvi in the amount of $750,000. Carney made a second partial payment to Silvi on June 28, 2017, in the amount of $500,000. A balance of $161,429.05 remains unpaid.

Silvi filed a complaint against Carney alleging breach of contract, violations of CASPA, and unjust enrichment. Silvi also brought a claim against Carney's payment bond surety, Arch Insurance Company ("Arch")[2], for breach of payment bond obligations. Carney filed a counterclaim against Silvi for breach of contract.

A jury trial was held over six days in January 2020. The jury found in favor of Silvi, specifically finding that Carney breached the contract. The jury awarded Silvi $161,429.05 for unpaid contract balances and an additional $1,095,748.00 for lost profits. The jury rejected Carney's counterclaim. Carney filed post-trial motions, which were denied. The court issued an Interim Opinion on June 16, 2020 in support of its order denying Carney's post-trial motions.

By agreement of the parties, the issues relating to CASPA, litigation costs and attorneys' fees, and Arch's liability, were bifurcated and heard by

---

[2] Arch has joined Carney in this appeal.

- 4 -

the trial judge after the jury trial in a bench trial. After hearing testimony on these bifurcated issues, the court, by order dated March 8, 2021, molded the jury's verdict to include awarding Silvi contractual pre-judgment and post-judgment interest and attorneys' fees and costs of litigation, and entered judgment in favor of Silvi in the amount of $2,090,565.04. The court, however, denied Silvi's claims under CASPA, finding that Carney withheld payment from Silvi "in good faith." The court also entered judgment in favor of Silvi and against Arch in the amount of $198,686.04, finding Arch jointly and severally liable with Carney. The court issued findings of fact and conclusions of law in support of its order. Both parties filed post-trial motions, which were denied. Carney thereafter filed a notice of appeal and Silvi filed a cross-appeal.[3]

Silvi raises the following issues:

_____

[3] Although the trial court's March 8, 2021 order specified that judgment was entered in favor of Silvi, the judgment was not reflected on the docket. By order dated April 7, 2021, the court indicated that the time for filing post-trial motions and appeals began to run on April 6, 2021 (the date the Rule 236 notice was provided for the March 8, 2021 order).

On May 5, 2021, Carney and Arch filed a notice of appeal from the March 8, 2021 order, even though there was still no judgment entered on the docket. On May 19, 2021, Silvi filed a cross-appeal. On May 28, 2021, Silvi filed separate praecipes for judgment against Arch and Carney. The docket was corrected to reflect that the appeals are from the judgment entered on May 28, 2021. The appeals are timely since a "notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5).

1. Did the [t]rial [c]ourt abuse its discretion and commit an error of law where it refused to award CASPA penalties on the late payments and Silvi's unpaid contract balance where the jury rejected Carney's basis for withholding after the acceptance of the concrete on May 19, 2017?

2. Did the [t]rial [c]ourt abuse its discretion and commit an error of law where it refused to award CASPA penalties on Silvi's unpaid contract balance totaling $161,429.05 where the jury rejected Carney's basis for withholding the contract balance?

3. Did the [t]rial [c]ourt abuse its discretion and commit an error of law by taking judicial notice "that the cost to fix the mat slab foundation if the Silvi concrete had not ultimately been accepted would have 'absolutely' been greater than the amount owed to Silvi[?]"

4. Did the [t]rial [c]ourt abuse its discretion and commit an error of law where it refused to award penalties under CASPA despite the fact that Carney's withholding was not reasonably related to the value of a good faith claim for a deficiency item?

Silvi's Br. at 3-4.

Carney raises the following issues on cross-appeal:

1. Did the trial court commit an error of law when it allowed Silvi's lost profits damages claim as a "lost volume seller" to proceed to the jury despite Pennsylvania rejecting this theory and Silvi fully mitigating its damages?

2. Did the trial court commit an error of law when it allowed Silvi's lost profits claim to proceed to the jury despite it being highly speculative because high-strength concrete was a new and untried line of business for Silvi that it had already demonstrated it was incapable of providing?

3. Did the trial court abuse its discretion by precluding introduction into evidence the results of the compressive concrete tests at 7, 28, 90 and 180 days as being probative of Carney's termination of Silvi and/or its counterclaim for breach of contract against Silvi?

4. Did the trial court abuse its discretion by excluding the report and testimony of Carney's concrete expert, Kevin MacDonald, Ph.D., P.E., where his testimony would have [benefited] the jury by explaining the significance of compressive concrete testing, the significance of the 7 day and 90 day testing, and the adequacy of the 10,000-psi mix design provided to Silvi for the mat slab foundation?

5. Did the trial court abuse its discretion by precluding evidence of Silvi's rejected 12,000-psi mix, which was relevant to demonstrating an anticipatory breach and the futility of Silvi's ability to cure?

6. Did the trial court abuse its discretion and usurp the jury's fact-finding role by determining prior to trial that Silvi's version of the contract applied, which required credibility determinations, and precluding Carney from offering competing evidence of the terms of the contract it believed applied?

7. Did the trial court abuse its discretion by assessing all of Silvi's attorneys' fees and costs against Carney as a "prevailing party" by virtue of a contract term that Carney did not sign?

8. Did the trial court abuse its discretion by assessing all of Silvi's attorneys' fees and costs against Carney as a "prevailing party" without capping the attorney[s'] fees and costs at 20% of the contract balance as set forth in the parties' Credit Agreement or providing any credit to Carney for attorneys' fees spent defending Silvi from potentially millions of dollars of liability for its deficient concrete?

9. Did the trial court abuse its discretion by precluding from testifying John Gajda of CTL, Carney's mix designer and jointly retained by Silvi and Carney, who would have testified about the Silvi 12,000-psi mix that was rejected as well as the problems with Silvi's concrete?

10. Did the trial court abuse its discretion by precluding evidence of Silvi's breach of contract such as the failed compressive tests particularly at ninety days such that Carney could not present its counterclaim breach of contract case to the jury?

Carney's Br. at 33-36.

***Silvi's Appeal***:

All of Silvi's issues relate to the trial court's denial of its claims for relief under CASPA, and we will address them together. Silvi argues that when the jury determined that Carney breached the contract and rejected Carney's counterclaim, the jury implicitly found there was no deficiency in Silvi's work. Silvi's Br. at 17. Silvi maintains that since there was no deficiency, "Carney had no good faith basis to withhold payment after the [p]roject's structural engineer of record accepted the concrete on May 19, 2017." ***Id.*** at 23. According to Silvi, the trial court effectively usurped the jury's role as the finder of fact and erred when it found that Carney had a good faith basis to withhold payment to Silvi. ***Id.*** at 17.

Silvi further contends that the court erred by taking judicial notice that the potential cost to fix an alleged deficiency in the mat slab foundation was greater than the amount withheld by Carney. ***Id.*** at 26. Silvi argues that Carney failed to present evidence that its withholding was reasonably related to the objective value of its alleged good faith claim. ***Id.*** It therefore contends that it was entitled to statutory penalties under CASPA.

CASPA is a comprehensive statute enacted in 1994 and was promulgated to

> cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair dealing among

parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

*Prieto Corp. v. Gambone Const. Co.*, 100 A.3d 602, 607 (Pa.Super. 2014) (citation omitted).

Under CASPA, a contractor may withhold payment from any subcontractor responsible for a deficiency item. 73 P.S. § 511. A "deficiency item" is defined under the statute as "[w]ork performed but which the owner, the contractor or the inspector will not certify as being completed according to the specifications of a construction contract." *Id.* at § 502.

CASPA provides for three main types of damages for failure to make timely payments of amounts rightfully due – (1) interest, (2) penalties, and (3) attorney fees/expenses. *John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696, 710 (Pa.Super. 2003). First, CASPA "provides for interest on impermissibly delayed payments." *Id.* Under Section 5, late payment may entitle a contractor to interest at a rate of 1% per month "if any progress or final payment to a contractor is not paid within seven days of the due date[.]" 73 P.S. § 505(d).

Second, in addition to interest, CASPA allows for penalties. "Under Section 12(a), a claimant may recover an additional penalty of 1% per month (another 12% per year) if the payment was withheld wrongfully, but such

- 9 -

recovery requires a determination that the owner did not withhold payment in good faith." ***United Envtl. Grp., Inc. v. GKK McKnight, LP***, 176 A.3d 946, 960 (Pa.Super. 2017) (citing 73 P.S. § 512(a)) (additional citations omitted). Relevant here, an amount shall not be deemed to have been wrongfully withheld if the "amount bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment." 73 P.S. § 512(a)(2)(i).

In other words, pursuant to the statute's plain language, to recover a penalty payment, the subcontractor must establish that the amounts due were "wrongfully withheld" and a contractor does not wrongfully withhold a payment that it otherwise owes if the value of such a claim held in good faith bears a reasonable relationship to the subcontractor's claim against the contractor. ***Id.*** Therefore, payments that are withheld in good faith are not "wrongfully withheld," and thus, are not subject to the penalty provisions of CASPA. ***Id.***; ***see also John B. Conomos, Inc.***, 831 A.2d at 711 (stating that CASPA "requires penalties . . . for untimely payment of amounts *improperl*y withheld") (emphasis added).

Lastly, CASPA provides for the awarding of reasonable attorneys' fees and expenses. Under Section 12(b), a claimant may "recover attorneys' fees and expenses, but only if the claimant is a 'substantially prevailing party in any proceeding to recover any payment under this act.'" ***United Envtl. Grp.***, 176 A.3d at 960 (quoting 73 P.S. § 512(b)) (additional citations omitted).

- 10 -

Here, Silvi only disputes that it was entitled penalties under CASPA.[4] The court found that Silvi was not entitled to penalties under CASPA because Carney had a good faith basis to withhold payment. Conclusions of Law, 3/8/21, at ¶ 52. The court stated that the evidence showed that the compressive strength of the concrete poured by Silvi was materially deficient on the tests done on the seven-day, 28-day, 90-day, and 180-day marks and that Silvi was notified of these results. *Id.* at ¶ 50. The court also found that the costs to potentially fix the mat slab foundation, if Silvi's concrete had not been accepted, significantly outweighed the amount Carney withheld from Silvi by tens of millions of dollars. *Id.* at ¶ 51. As such, the court found that "Carney had a good faith basis to withhold the contract balance from Silvi up to and until the time it was accepted by O&N, at which time Carney issued payment." *Id.* at ¶ 52.

The trial court's findings are supported by the record. The evidence showed that the concrete supplied by Silvi for the mat slab foundation was not accepted by O&N until May 19, 2017, ten months after the mat slab pour. Prior to that time, Carney did not know whether Silvi's concrete would be accepted by O&N, and Carney had major concerns about the concrete since all of the testing showed the concrete was below strength. *See* N.T., 12/8/20, at 69-72, 86-89, 94-100. Carney was at risk of incurring substantial costs if it

---

[4] The court awarded attorneys' fees to Silvi, irrespective of CASPA, because the contract between the parties expressly provided for the award of attorneys' fees. *See* Conclusions of Law, 3/8/21, at ¶ 55.

had to fix or replace the concrete. *Id.* at 72, 99. It estimated that it would cost $10 to $15 million if the concrete had to be removed and $3 million to $4 million to replace it, and Carney would have additionally incurred liquidated damages of $35,000 per day. *Id.* at 88, 130; Ex. 137. The trial court determined, as a matter of credibility, that Carney withheld the payment in good faith and the amount retained bore a reasonable relation to the value of Silvi's claim. Thus, the court did not err in finding that Carney had a good faith basis to withhold payment to Silvi "up to and until the time it was accepted by O&N, at which time Carney issued payment." Conclusions of Law, at ¶ 52.

However, the court made no such good faith determination as to Carney's withholding of contract balance *after* the concrete was accepted by O&N. After the contract was accepted, Carney made two partial payments to Silvi of $750,000 and $500,000; however, Carney never paid the contract balance of $161,429.05. The court made no finding on whether the contract balance of $161,429.05 was wrongfully withheld by Carney. It only found that Carney had a good faith basis to withhold payment until acceptance by O&N. Accordingly, we vacate and remand for the court to make a good faith determination regarding the time after O&N accepted the concrete and determine whether Silvi is entitled to CASPA penalties on the withholding of the contract balance of $161,429.05.

### Carney's Cross-Appeal:

Carney raises ten issues in its cross-appeal. We address each issue separately.

*Issue 1 (Lost Volume Seller)*:

Carney contends that the trial court erred when it allowed Silvi's lost profits damages claim as a "lost volume seller" to proceed to the jury despite Pennsylvania rejecting this theory. Carney filed a motion *in limine* to preclude Silvi from putting in lost-volume-seller evidence and preclude its lost profit expert, Chad Staller, from testifying, and Carney contends that the court erred by denying that motion. Carney's Br. at 44. Carney states that although "Silvi carefully avoids using the phrase 'lost volume seller' because it knows that Pennsylvania does not recognize such a claim[,]" Silvi essentially argued that it was a lost volume seller when it claimed that it was not possible for it to replace the Carney contract with new business. *Id.* at 41, 44.

Carney's claim challenges the trial court's ruling on its motion *in limine*.[5] "The purpose of pretrial motions *in limine* is to 'give the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury.'" *Buttaccio v. Am. Premier Underwriters, Inc.*, 175 A.3d 311, 320 (Pa.Super. 2017) (citation and brackets omitted). We review rulings on the

_____

[5] Carney also appears to allege error in the trial court's jury instructions on damages. *See* Carney's Br. at 50 n.17. However, Carney failed to make a timely and specific objection at trial to these jury instructions. *See* N.T., 1/16/20, at 113-16, 119-20. As such, this claim is waived. *See Bezerra v. Nat'l R. R. Passenger Corp.*, 760 A.2d 56, 64 (Pa.Super. 2000) (stating that where a party fails to make a specific objection to a jury instruction, that claim is waived and cannot be raised on appeal).

- 13 -

grant or denial of a motion *in limine* for an abuse of discretion. ***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa.Super. 2014) (*en banc*).

A "lost volume seller" is an injured party that would have entered into a subsequent contract, even if the first contract had not been broken, and could have had the benefit of both contracts. ***See Restatement (Second) of Contracts, § 347 cmt f***. Pennsylvania does not recognize this concept since "[a]pplication of the doctrine would encourage the non-breaching party to do nothing to minimize its damages." ***Northeastern Vending Co. v. P.D.O., Inc.***, 606 A.2d 936, 938 (Pa.Super. 1992). Nonetheless, a non-breaching party that has reasonably attempted to mitigate its damages may collect damages for lost profits. ***See id.*** at 938-39.

Here, Silvi's expert testified that Silvi suffered damages of lost profits in the amount of $1,095,748 as a result of Carney's termination of the contract. N.T., 1/9/20, at 195. The court specifically found that "Silvi made every reasonable effort to mitigate the lost sales and damages it suffered at the hands of Carney by reselling the material, thereby fulfilling the non-breaching party's duty to mitigate losses." Trial Court Interim Opinion ("Trial Ct. Op."), filed 6/16/20, at 7. The court noted that the jury had heard from both Silvi's and Carney's experts on damages and properly weighed their testimony and assessed their credibility. ***Id.***

The court properly allowed this evidence because it was relevant to Silvi's claim of lost profits against Carney. A jury is free to believe or reject expert testimony. ***Spencer v. Johnson***, 249 A.3d 529, 574 (Pa.Super. 2021).

- 14 -

The jury evidently credited Silvi's expert testimony. We discern no abuse of discretion.

### Issue 2 (Allegedly Speculative Lost Profits):

Carney contends that the court erred when it allowed Silvi's lost profits' claim to proceed to the jury despite it being highly speculative. Carney's Br. at 51. It argues there was no basis to conclude that Silvi could have fulfilled the requirements of the project because its concrete failed compressive strength testing at every age and Silvi admitted that it never previously supplied high-strength concrete. *Id.* at 51, 53. Carney maintains that the court abused its discretion when it denied its motion *in limine* on Silvi's lost profits claim. *Id.* at 53.

This claim is without merit. Silvi presented evidence at trial that it was in the ready-mix concrete business for 73 years and it had experience with mixing high-strength concrete in the lab and had participated as well in numerous competitions for making high-strength concrete. N.T., 1/10/20, at 8-9, 76. Silvi's Chief Financial Officer, Michael Matalavage, testified that Silvi "absolutely" had sufficient capacity to supply all of the concrete for the W Hotel project had it not been terminated. N.T., 1/9/20, at 96. Matalavage was able to determine this based on the amount of concrete supplied by SJA on the project after Silvi's termination. *Id.* Further, as previously explained, Silvi presented expert testimony as to the amount of its damages for lost profits to reasonable degree of economic certainty. *Id.* at 195. During jury instructions, the court emphasized that damages for lost profits "that are unsatisfactorily

proved, remote, speculative, [or] guesswork cannot be recovered." N.T., 1/16/20, at 115. Accordingly, there was ample evidence for the jury to determine that Silvi suffered lost profits and they were not speculative.

### *Issue 3 (Preclusion of Concrete Tests Done at Seven, 28, 90, and 180 Days):*

Silvi's concrete was tested at seven, 28, 90 and 180 days. Although the testing evidence was considered at the bench trial, the court granted Silvi's motion *in limine* to preclude introduction of this evidence at the jury trial. Carney argues that this ruling "seriously prejudiced [its] ability to put on its breach of contract case against Silvi or defend itself from Silvi's claims." Carney's Br. at 56.

*Seven-Day Test Results:*

As to the seven-day test results, Carney argues that "the jury should have been permitted to evaluate whether the poor results constituted either a material or anticipatory breach justifying termination of the remainder of the contract." **Id.** at 57.

The court precluded the seven-day test results as irrelevant to the contract claim before the jury because the contract did not require the concrete to have any specified strength seven days after pouring. Trial Ct. Op., at 9. The court explained:

> Carney posits the results of the seven-day strength test as a potential anticipatory breach. However, the seven-day strength test results were irrelevant to the issue of termination: although tests were performed seven days after the pour, and prior to termination, the contract does not require the concrete to achieve any specified strength

at the seven-day mark. The contract is devoid of any mention of seven-day cylinder breaks. Thus, because the seven[-]day tests could not constitute a breach of the contract, the court properly precluded this evidence which could have only misled and confused the jury.

*Id.*

"[T]he decision to admit or exclude evidence is vested in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion." **Parr**, 109 A.3d at 695-96. To be admissible, evidence must be relevant. Pa.R.E. 402. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. A trial court has broad discretion to exclude potentially misleading or confusing evidence. **Rohe v. Vinson**, 158 A.3d 88, 95 (Pa.Super. 2016). "The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function." **Lykes v. Yates**, 77 A.3d 27, 33 (Pa.Super. 2013) (citation omitted).

We discern no abuse of discretion by the trial court in excluding the seven-day test results. The contract did not require that the concrete achieve any specified strength at the seven-day mark. Rather, the contract only required compressive testing at the 56-day and 90-day marks before being approved as appropriate to meet job specifications. **See** Ex. 47 at ¶ 3.

Therefore, even though the seven-day results were below strength, it was irrelevant since it could not constitute a breach of the contract by Silvi.

*The 28-Day, 90-Day and 180-Day Test Results:*

Carney argues that the court abused its discretion in refusing to allow the jury to consider the 28-day, 90-day and 180-day test results because the continued failures of the concrete justified Silvi's termination. Carney's Br. at 60-61. Carney contends that "[e]ven if the jury were to find that Carney was not justified in terminating Silvi on July 22, 2016, it could certainly find that Carney was justified as of October 8, 2016 after the structural engineer refused to accept Silvi's concrete at the [90]-day mark[.]" *Id.* at 61-62.

The court explained that it excluded this evidence because these tests were taken after Carney terminated Silvi and were therefore irrelevant and inadmissible. Trial Ct. Op., at 9.

We find no abuse of discretion. It was undisputed that Carney terminated the contract 12 days after the mat slab pour. Any test results obtained after termination would be irrelevant to show that Carney was justified in its termination of Silvi.

**Issue 4 (Preclusion of Carney's Expert, Kevin MacDonald)**:

Carney argues that the court abused its discretion by excluding the report and testimony of Carney's concrete expert, Kevin MacDonald, Ph.D. Carney alleges that MacDonald's testimony would have explained the significance of compressive concrete testing, the seven-day testing, and the 90-day testing. Carney maintains that MacDonald would also have explained

- 18 -

the adequacy of the 10,000-psi mix design provided to Silvi for the mat slab foundation.

The court explained that it excluded MacDonald's testimony because it was cumulative and irrelevant. Trial Ct. Op., at 10. The court found that MacDonald's report "was based largely on inadmissible evidence precluded by the court's rulings on other motions *in limine*, including but not limited to Silvi's material for the concrete mix[ and] the results of various strength and core testing at seven and ninety days[.]" **Id.** The court also concluded that MacDonald's report "was riddled with legal conclusions, and contained inappropriate testimony, including specifically that Carney 'acted prudently' in terminating Silvi on July 22, 2016, that it was clear at the time of the pour that the concrete was out of compliance, and that the non-compliance of the pour presented significant risk to the schedule and quality of the project." **Id.**

The admission of expert testimony is within the discretion of the trial court and should not be disturbed on appeal unless the trial court abuses its discretion. **Buttaccio**, 175 A.3d at 315. "Expert witnesses are not permitted to render legal opinions." **Ruff v. York Hospital**, 257 A.3d 43, 60 (Pa.Super. 2021).

Here, MacDonald's report contained improper legal conclusions, including that Carney acted properly in terminating its contract with Silvi. The report was also largely based on the seven-day and 90-day compression testing results, as well as other evidence obtained after termination, which was inadmissible. Accordingly, the court did not err in precluding this expert.

**Issue 5 (Preclusion of the 12,000-Psi Mix)**:

Two days before Carney terminated the contract, Carney submitted Silvi's proposed mix design for the 12,000-psi concrete, which was scheduled as the next phase of the project, to Tutor Perini for approval. Tutor Perini rejected the 12,000-psi mix design. Carney claims the trial court erred when it precluded this evidence of rejection of the 12,000-psi mixture. Carney's Br. at 69. Carney argues that the rejection of the 12,000 psi-mix was relevant to show that it was justified in "terminating the contract with Silvi after the mass pour when it was clear that Silvi was unable to move forward on the [p]roject due to Silvi's failure to provide the core requirement of an adequate concrete mix design." *Id.* at 71-72.

The court found that the 12,000 psi-mix was both irrelevant and immaterial because the purported rejection of the design did not constitute a breach of contract. Trial Ct. Op., at 12. It explained that the contract specifically stated that Carney, not Silvi, was required to provide the concrete mix designs. *Id.* Therefore, the court opined that "Carney was not permitted to present evidence that a mix design submitted by Silvi five days after the pour for work other than the mat slab as evidence that Silvi breached the contract." *Id.* The court further found that Carney could not rely on the rejection of the 12,000 psi-mix as an after-the-fact justification for terminating the contract. *Id.*

The court did not err. Paragraph 3 of the contract clearly states that Carney, or its consultant CTL, was to supply the mix designs. Ex. 47 at ¶ 3.

The rejection of the 12,000 psi-mix by Tutor Perini did not constitute a breach of the contract, and therefore, could not justify Carney's termination of the contract.

***Issue 6 (Alleged Disputed Contract Terms)***:

Carney argues that there were two different versions of the contract between the parties. Carney's Br. at 72. Carney alleges that the trial court abused its discretion when it "usurped the jury's fact-finding role and decided that Silvi's Contract Version applied, precluding Carney from putting on evidence of the terms that Carney contended governed the concrete supply contract with Silvi." ***Id.*** at 73. Specifically, Carney contends that the court erred when it precluded evidence of Carney's purchase order as parol evidence. ***Id.*** Carney states that the purchase order incorporated by reference the specifications, "which identified specified strengths of concrete to be provided, early strength testing at seven and 28 days, and incorporated the Silvi [pricing quote] providing the pricing for the various concrete strengths." ***Id.*** at 9.

Our Supreme Court has described the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract. . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

- 21 -

***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 436 (Pa. 2004) (citation omitted) (alteration in original).

Here, the trial court precluded the purchase order, reasoning that it was parol evidence:

> Contrary to Carney's argument, the court did not simply accept "Silvi's version" of the contract. The court admitted the actual contract (Trial Exhibit 47) which was signed and initialed by the parties, and kept out ancillary documents such as a one-page price list and an unsigned page consisting of terms and conditions. An examination before the jury of each page potentially constituting the parties' agreement would have been unduly burdensome, would have caused unnecessary delay, and would cause more confusion than clarity. Under Pennsylvania law, where the parties, without fraud or mistake, have deliberately put their agreements in writing, the law declares that writing to be the best and only evidence of their agreement.

Trial Ct. Op., at 10-11.

The court did not err in precluding the purchase order from evidence. Silvi never executed the purchase order, so it never agreed to be bound to its terms. Moreover, the contract that was admitted was signed by both parties and stated: "This is the only binding pricing agreement between our two companies and supersedes any purchase orders." ***See*** Ex. 47. Any evidence of prior negotiations or drafts of the final contract, including the purchase order, was inadmissible because the fully integrated and signed contract represented the entire agreement among the parties.

***Issue 7 (Award of Attorneys' Fees)***:

Carney contends that the court improperly awarded attorneys' fees and costs to Silvi. Carney's Br. at 76. Carney alleges that "[t]he only page of the [c]ontract that Silvi and Carney both agree applies, the [first]-page Silvi [q]uote, does not provide for attorneys' fees for a prevailing party." *Id.* at 77. Carney maintains that although Paragraph 4 of the terms and conditions page contained an attorneys' fees provision, that clause was excluded by Carney's handwriting on the first page of the contract, which stated: "other terms and conditions not included." *Id.*

Generally, the parties to an action must bear their own attorneys' fees. ***Dep't of Envtl. Prot. v. Bethenergy Mines, Inc.***, 758 A.2d 1168, 1173 (Pa. 2000). However, a party may recover attorneys' fees from an adverse party by "an express statutory authorization, a clear agreement by the parties[,] or some other established exception." ***Merlino v. Del. Cnty.***, 728 A.2d 949, 951 (Pa. 1999).

Here, Paragraph 4 of the contract clearly states: "In addition to any other available rights and remedies, Seller [Silvi] will be entitled to recover from Buyer [Carney] all costs of collection and litigation including, but not limited to, reasonable attorneys' fees." Ex. 47. Carney's Vice President, John Carney, admitted that he initialed the contract, and his initials appear on the page that contained the attorneys' fee provision. N.T., 1/13/20, at 118-19; Ex. 47. The court did not err in awarding attorneys' fees to Silvi.

**Issue 8 (Alleged Cap on Attorneys' Fees)**:

Carney argues that even if the attorneys' fees provision applies, the court should have capped the attorneys' fees at 20% of the contract balance pursuant to the parties' credit agreement. Carney's Br. at 79. The parties' credit agreement, signed in October 2005, was incorporated by reference in paragraph one of the contract. The credit agreement provides: "[I]f [Carney's] account is placed in the hands of an agency or attorney for collection or legal action, [Carney is] to pay an[] additional charge equal to 20% of the outstanding account balance to offset the cost of[] collection including agency, attorney[s'] fees, and court costs." Ex. 1. Carney alleges that "pursuant to the [c]redit [a]greement that Silvi relies upon and was accepted by [the trial court], to the extent that attorneys' fees are awarded, Silvi would be entitled to 20% of the $161,429.05 outstanding contract balance [owed] to Silvi, which is $32,285.81." Carney's Br. at 79-80.

Carney misinterprets the credit agreement. The credit agreement did not put a cap on the award of attorneys' fees in the instant litigation. The credit agreement, entered into 11 years before the contract at issue, applied to any purchase of concrete that Carney made from Silvi on credit. The credit agreement allowed Silvi to collect an "additional charge equal to 20% of the outstanding account balance" that was on credit. Ex. 1. The instant contract, which was specifically negotiated for the concrete project at issue here, entitled Silvi to collect "all costs of collection and litigation including, but not limited to, reasonable attorneys' fees." Ex. 47. The court awarded attorneys'

fees based on the breach of the contract, not because Carney failed to remit payment on its general credit account.

Carney also alleges that the award of attorneys' fees and costs were disproportionate to the amount of the contract balance and were not reasonable. Carney's Br. 82-83. It maintains that the trial court should have excluded certain fees and costs. It also maintains that this Court has affirmed decisions reducing attorneys' fees founded on a "block billing" approach, such as it contends Carney used here.

The trial court heard evidence regarding the amount of Silvi's attorneys' fees and costs and determined that they were necessary and reasonable. ***See*** N.T., 12/8/20, at 44-50; Ex. 220; Conclusions of Law, at ¶¶ 37, 38. Carney cites no meaningful evidence on which to disturb the court's findings. Its legal argument regarding "block billing" is also lacking. It has the analysis backwards. It has identified no decision holding that a trial court abuses its discretion by failing to reduce a fee award because of the use of "block billing."

***Issue 9 (Preclusion of John Gajda)***:

Issue 9 of Carney's Statement of Questions Involved Carney contends that the court erred in precluding CTL's mix designer, John Gajda, from testifying. However, it fails to address this issue in the Argument section of its brief.

Pennsylvania Rule of Appellate Procedure 2119 provides that the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued[,]" and requires each section to have a

"discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). It is an appellant's obligation to present arguments that are sufficiently developed for our review, and it is not the role of this Court to develop an appellant's argument. ***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa.Super. 2010). "Because such an omission impedes on our ability to address the issue on appeal, an issue that is not properly briefed in this manner is considered waived." ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa.Super. 2006). Accordingly, Carney's failure to develop its argument results in waiver of this issue.

### *Issue 10 (Failed Compressive Tests)*:

Carney's last issue alleges that "the trial court abuse[d] its discretion by precluding evidence of Silvi's breach of contract such as the failed compressive tests particularly at ninety days such that Carney could not present its counterclaim breach of contract case to the jury." Carney's Br. at 36. This issue of the failed compressive tests was already addressed in Issue 3. Therefore, it is duplicative, and we need not address it again.

Judgment affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/1/2022</u>